■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK E. WENDLING, Appellant.—Casey, J. Appeal from a judgment of the County Court of Columbia County (Zittell, J.), rendered November 22, 1982, upon a verdict convicting defendant of the crime of murder in the second degree.

Defendant's conviction stemmed from the shotgun shooting of his wife in their trailer on September 27, 1980. Her death was estimated to have occurred at about 5:00 P.M. on that date from the blast of a 16-gauge shotgun in the forehead. Defendant claimed that he found her in that condition on a couch in their trailer at about 8:00 P.M. that day when he returned from Potts Apple Orchard, where he had been collecting apples since 9:00 A.M. Defendant did not, however, report her death until the following morning, at about 8:00 A.M., when he went to the home of a neighbor, Alice Howard, and said that

his wife had shot herself the preceding day. Defendant also said that he had found her when he returned to the trailer but had not notified anyone sooner because he was upset and nothing could have been done to save her. Howard's husband confirmed this conversation. The Howards notified the State Police immediately and investigators were dispatched to the scene. Their testimony described defendant as extremely upset, mumbling and incoherent in his speech. At one point, he asked a State Police officer to "kill him" Questioning of defendant was difficult, since he was born in Alsace-Lorraine region of France and spoke with the accent of that region. In one of his several statements, he described finding his wife when he arrived home with the shotgun lying on her body and with its barrel on her face. Defendant stated that he unloaded the gun by removing the cartridge, placed the cartridge on the kitchen counter, wiped the gun and placed it in the kitchen cupboard. He claimed that he was so upset that he immediately went to bed, not awaking until the following morning about 8:00, when he notified his neighbors of the occurrence. Investigator Stanley Werner, the first to arrive, found the victim as described, with no gun on her body and the expended cartridge on the kitchen shelf in a plastic mail container. Investigator John Savosky and Dr. Joseph Bellamy, a pathologist, related how a demonstration they conducted at the scene showed that the victim's arms were not long enough to have fired the fatal shot herself, and that the angle of the blast and the estimated distance of the gun from the victim when it was fired made the self-infliction of the wound impossible. Furthermore, the victim's blood indicated a .26% blood-alcohol level, indicating the unlikelihood of a self-inflicted wound.

In contradiction of defendant's assertion that he was not at home all day on September 27, 1980, the prosecution offered proof that his jeep was observed parked in an unusual spot near the trailer about 1:30 P.M. on that day and that the raised but muffled female voice of the victim was heard emanating from the trailer in the afternoon of the same day. In another of his statements, defendant accused his wife of sexual intercourse with a neighbor, and this was offered by the prosecution as a possible motive. In summation, despite the lack of expert testimony on the issue, the prosecution laid much stress on the fact that the recoil of a 16-gauge shotgun would have rendered it impossible for the gun to have remained on the wife's body if she herself had fired the fatal shot.

After his indictment for murder in the second degree in September 1980, defendant was adjudged mentally incapacitated and unfit to proceed to trial (CPL art 730). Accordingly, the trial did not commence until October 4, 1982, when defendant was found capable of proceeding.

In defense of the prosecution's proof, outlined above, defendant claimed that his wife's death was suicide and that even if he was found to have shot her, he bore no criminal responsibility through his lack of mental capacity at the time of the commission of the crime. Defendant was convicted of murder in the second degree as charged and sentenced to 16 years to life in prison.

On this appeal, defendant argues principally the ineffectiveness of his trial counsel in failing to demand a *Huntley* hearing (15 NY2d 72) on the issue of the involuntariness of his several statements. Defendant does not contend that these statements were forcibly extracted, but only that his mental condition prevented a knowing and intelligent waiver of his *Miranda* rights. We disagree. Significantly, none of the statements contain defendant's admission of guilt. Rather, they substantiate his claim that his wife committed suicide. The strange and suspicious failure of defendant to report her death promptly and his remaining incommunicado with her body overnight in the trailer gave some support to defendant's claim of insanity, as did his request to the investigator to kill him. The defenses were utilized as competently and compatibly as the facts permitted. Defendant did not testify on his own behalf. In hindsight, and in light of the verdict rendered, it may be said that the trial strategy might have been employed differently, the competency of counsel should not, however, be judged by the result alone. In the circumstances, we find no error in counsel's failure to demand a *Huntley* hearing; defendant's representation was otherwise thorough and competent (*see, People v Hatch,* 105 AD2d 549, 551).

In regard to the claim of prejudice based on the prosecution's summation, we find, at most, harmless error. It is common knowledge that a 16-gauge shotgun recoils when fired. Although the degree or extent of said recoil cannot be accurately estimated without expert opinion, it was fair comment for the prosecution to tell the jury on summation that it would have been impossible for the gun to have remained on the victim's body, where the defendant claimed he found it, if the wound had been self-inflicted. We note that no objection was taken to this part of the prosecutor's summation and, in view of the overwhelming proof of guilt, at least circumstan-

tially, we decline to disturb the jury's verdict in the interest of justice, or to modify the sentence imposed, which was very nearly the minimum for the crime of which defendant was convicted. Defendant was adequately represented and fairly tried and convicted; the judgment of conviction should, therefore, be affirmed.

Judgment affirmed. Mahoney, P. J., Kane, Main, Casey and Weiss, JJ., concur.